UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BITUMINOUS CASUALTY
CORPORATION and EVEREST
NATIONAL INSURANCE COMPANY,

        Plaintiffs,

    v.

KERR CONTRACTORS, INC., and
THE CITY OF PORTLAND,

        Defendants.

No. CV 10-78-MO

OPINION AND ORDER

MOSMAN, J.,

    Plaintiffs Bituminous Casualty Corporation ("BCC") and Everest National Insurance Company are two insurance companies that issued insurance policies to defendant Kerr Contractors, Inc. The other defendant in this case, the City of Portland, sued Kerr in state court for thirteen million dollars worth of damages the City alleges were caused by Kerr's negligence and breach of contract during sewer pipe installation. (*See* Van Dyke Decl. (#33) Ex. A.) Over a year after the state lawsuit was filed, BCC and Everest filed this federal lawsuit against the City of Portland and Kerr, in which they seek a declaration that they have no duty to defend or indemnify Kerr in the underlying state action. The sole basis for federal court jurisdiction is diversity of citizenship. *See* 18 U.S.C. § 1332. The City of Portland now moves this Court to

-1-

exercise its discretion to dismiss, abstain, or stay these federal proceedings. (Def. City of Portland's Mot. to Dismiss, Abstain, or in the Alternative, to Stay Proceedings (#16).) Kerr joined the City's motion (Kerr's Resp. to Def. City's Mot. (#23)), and also moved separately for an order limiting discovery on plaintiffs' duty to defend claims and staying plaintiffs' duty to indemnify claims (Kerr's Mot. (#13).) Because it is unlikely that this lawsuit can be resolved without creating entanglement between the state and federal court systems, I GRANT the City of Portland's motion and DISMISS this action without prejudice.

## DISCUSSION

The Declaratory Judgments Act states: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Act requires federal district courts to consider two threshold questions. First, is there an actual case or controversy under Article III, and second, should the court choose to exercise that jurisdiction? *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44 (9th Cir. 1994). The requirements for diversity jurisdiction are satisfied in this case (*see* Compl. (#1) ¶¶ 1-4; *see also* 18 U.S.C. § 1332), and there is an actual case or controversy between the parties. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 271-74 (1941) (holding that "there [was] a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" when an insurer sued for a declaration regarding its duty to defend and indemnify before the underlying state action had proceeded to judgment). Therefore, the critical question for purposes of deciding the City's motion is whether this Court should choose to exercise discretionary jurisdiction over plaintiffs' declaratory relief action.

"[T]here is no per se rule against the district court exercising its jurisdiction to resolve an insurance coverage dispute when the underlying liability suit is pending in state court." *Kearns*, 15 F.3d at 145. Instead, my discretion under the Declaratory Judgments Act is guided by *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), which requires district courts to consider whether exercising jurisdiction would require "needless determination of state law issues," encourage forum shopping, or lead to duplicative litigation in state and federal court. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). The *Brillhart* factors lead district courts to "ascertain whether the questions in controversy between the parties . . . can be better settled in the proceeding pending in the state court." 316 U.S. at 495. "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991)). In addition to the established *Brillhart* factors, the district court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain*, 931 F.3d at 1367.

After considering the *Brillhart* factors, Ninth Circuit precedent, and principles of efficiency, fairness, and comity, I abstain from exercising discretionary jurisdiction over this declaratory judgment action. In reaching this decision, I find the first *Brillhart* factor, needless determination of state law, weighs against exercising jurisdiction over plaintiffs' duty to defend claims. As to the second *Brillhart* factor, forum shopping, I find there are facts favorable to both sides and this factor is neutral. With respect to the third *Brillhart* factor, duplicative litigation, I find the risk of inconsistent factual determinations weighs against exercising jurisdiction on the

more fact-intensive duty to indemnify claims. And to the extent plaintiffs seek to admit evidence beyond the complaint and insurance policy to negate their duty to defend, the duty to defend claims would also raise concerns about duplicative litigation. Other considerations identified by *Chamberlain* and *Dizol*, particularly considerations of comity and the interest in avoiding entanglement between state and federal court proceedings, weigh in favor of declining to exercise jurisdiction over both the duty to defend and duty to indemnify claims. Therefore, on balance, the *Brillhart*, *Chamberlain*, and *Dizol* factors weigh in favor of abstention.

I.  **Needless Determinations of State Law**

The first *Brillhart* factor considers whether the federal action would involve needless determinations of state law. Although insurance coverage cases often apply well-established Oregon law, the nature of plaintiffs' duty to defend claims, their responses to Kerr's motion and the City's motion, and their delay in filing this lawsuit to resolve their defense obligations all suggest that plaintiffs will seek to negate their duty to defend by introducing evidence from the underlying liability action. Under Oregon law, a court generally resolves the issue of an insured's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying liability action. *Abrams v. Gen. Star Indem. Co.*, 67 P.3d 931, 933 (Or. 2003). For this reason, duty to defend claims generally do not raise the same *Brillhart* concerns as duty to indemnify claims. *See Allstate Ins. Co. v. Hall*, No. 06-CV-653-BR, 2006 WL 2519608, at *5 (D. Or. Aug. 29, 2006) (deciding to retain jurisdiction over a declaratory judgment action in which "the Court only would be required to review the underlying state law complaint as well as the applicable insurance policies . . . to determine whether plaintiff has a duty to defend.") But plaintiffs argue, in the context of opposing Kerr's motion to limit discovery

on the duty to defend claims, that Oregon law allows courts to consider evidence beyond the complaint and insurance policy when "lack of coverage has been established in a separate judicial proceeding"—including the underlying state litigation. (Pls.' Resp. to Kerr's Mot. (#24) 11 n.7 (citing *Oregon Ins. Guar. Ass'n v. Thompson*, 760 P.2d 890, 893 (1988)).) From this line of cases, plaintiffs suggest that Oregon law prohibits an insurer from establishing facts outside of the complaint *only* when those facts are raised for the first time in the coverage actions. (*See* Pls.' Resp. to Kerr's Mot. (#24) 10-11.) And in their response to the City's motion, plaintiffs acknowledge that the issues relevant to the duty to defend claims, specifically what Kerr knew about the alleged problems with the pipeline and what "occurrences," if any, caused "property damage," will involve evidence beyond the complaint and insurance policy. (*See* Resp. to City's Mot. (#25) 9-10.)

Regardless of whether plaintiffs' interpretation of Oregon law is a correct one, their duty to defend claims would require this Court to decide whether evidence established in the underlying liability proceeding may be considered by a court when it resolves an insured's duty to defend—a question that remains unanswered by Oregon state courts. Plaintiffs' argument relies primarily on an Oregon Supreme Court case that resolved an insured's duty to defend by considering "compelling evidence of no coverage" based on factual findings that were established in a "separate judicial proceeding" and were "binding upon the plaintiff in any subsequent action against his insurer." *See Casey v. Nw. Sec. Ins. Co.*, 491 P.2d 208, 210 (Or. 1971); *N. Pac. Ins. Co. v. Wilson's Distrib. Serv. Inc.*, 908 P.2d 827, 831 (Or. Ct. App. 1995). However, this is still an ill-defined area of the law in which it is unclear how Oregon courts define "separate judicial proceeding" and "compelling evidence of no coverage." For example, a

subsequent Oregon Court of Appeals case defines "separate judicial proceeding" in a manner that excludes the underlying state court liability proceeding. *See N. Pac. Ins. Co. v. Wilson's Distrib. Serv., Inc.*, 908 P.2d 827, 832 (Or. Ct. App. 1995) ("[N]one of the authorities relied upon by plaintiff . . . supports its contention that it may establish facts in this declaratory judgment proceeding that have not been uncontrovertibly established in a separate proceeding, commenced before the underlying action is concluded, that would demonstrate that it has no duty to defend . . . .") *North Pacific*'s interpretation is not inconsistent with *Casey* or *Thompson*, which each involved three proceedings: a declaratory judgment proceeding, an underlying civil liability proceeding, and a concluded criminal proceeding—the "separate proceeding" in which a jury determination of the insured's guilt conclusively determined that the insurer had no duty to defend in the underlying civil proceeding. *See Casey*, 491 P.2d at 210-11; *Thompson*, 760 P.2d at 893. I express no opinion on how this question should ultimately be resolved; rather, I address it only to explain that plaintiffs' duty to defend claims appear likely to raise a novel and important state law question upon which there is substantial ground for difference of opinion.

## II. Forum Shopping

With respect to the second *Brillhart* factor, which is aimed at discouraging forum shopping, there is no evidence that plaintiffs filed this lawsuit after learning that Kerr intended to file, or had already filed, a declaratory action of its own in state court. However, even when there was no insurance coverage declaratory action pending in state court, the Ninth Circuit weighed this factor in favor of the insured because the plaintiff-insurer chose to file a declaratory judgment action in federal court instead of filing the action in state court, where it would be handled alongside the underlying litigation. *See Am. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d

1012, 1018 (9th Cir. 1995), *overruled on other grounds by Dizol*, 133 F.3d 1220; *see also Federated Servs. Ins. Co. v. Les Schwab Warehouse Ctr., Inc.*, No. Civ. 03-1268-HU, 2004 WL 1088298, at *5 (D. Or. Apr. 14, 2004).

There is no question that plaintiffs issued insurance policies to Kerr, an Oregon corporation (Compl. (#1) ¶¶ 3, 16, 19), and are amenable to suit in Oregon state courts. Declaratory relief is available under Oregon law. *See State Farm Fire & Cas. Co. v. Reuter*, 657 P.2d 1231, 1235 (Or. 1983) (noting that, under Oregon law, "[i]t is proper for insurance companies to join all potential third party claimants in a declaratory judgment action."). State court is a more appropriate forum for this litigation because that court is much more familiar with the facts and claims at issue in the underlying liability dispute, which has been pending since October 2008, and the state court is in a better position to coordinate the demands of this insurance coverage litigation with the demands of the pending liability trial. *See Brillhart*, 316 U.S. at 495 (requiring courts to consider whether the controversy "can better be settled in the proceeding pending in state court," including "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process.")

Therefore, because there is no evidence of "reactive" forum shopping, but there are still unanswered questions as to why plaintiffs now seek to resolve these insurance coverage issues in federal court instead of alongside the underlying state liability action, I conclude that this factor is neutral.

### III. Duplicative Litigation

The third *Brillhart* factor considers whether the federal case would create duplicative

litigation. The quintessential *Brillhart* abstention case is one in which an insurer brings a federal declaratory action to resolve an insurance coverage dispute while "a state court action involving the same parties and the same issue of coverage [is] already pending." *See Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992). When there is no pending coverage litigation in state court, neither *Brillhart* nor its progeny categorically forbid an insurer "from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." *Id.* Nevertheless, the Ninth Circuit has defined "parallel litigation" liberally and counseled its district courts to decline jurisdiction "when an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court." *Hungerford*, 53 F.3d at 1017; *see also Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 801 (9th Cir. 1995), *overruled on other grounds by Dizol*, 133 F.3d 1220 ("[C]oncerns of 'practicality' and 'wise judicial administration' generally counsel against the exercise of federal-court jurisdiction over claims for declaratory relief that involve only state law questions and are brought during the pendency of a related state court proceeding.").

    Plaintiffs' claims, particularly the duty to indemnify claims, are likely to require the Court to interpret state law in light of facts that are yet to be determined in the underlying state action. Questions involving the duty to indemnify generally raise more concern in this area than do questions involving the duty to defend. *See Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 890 (9th Cir. 2003) (noting that, under Oregon law, "'[t]he duty to indemnify is independent of the duty to defend,'" and, "unlike liability under the duty to defend, [liability for indemnity] derives from factual determinations separate from the allegations in the complaint.") (quoting

*Ledford v. Gutoski*, 877 P.2d 80, 84 (Or. 1994)). I agree with the general principle that a duty to defend claim is less likely to create duplicative litigation, and, for this reason, I consider primarily whether the duty to indemnify claims would create duplicative litigation. As the analysis of the first *Brillhart* factor suggests, however, if the unanswered state law question is resolved in plaintiffs favor and I consider plaintiffs' duty to defend in light of evidence beyond the City's complaint and the insurance policy, then plaintiffs' duty to defend claim would raise similar duplicative litigation concerns.

On the record I have before me, I disagree that the nature and extent of the City's alleged damages can be cleanly bifurcated from Kerr's liability for those damages. Because the cause, nature, and extent of the City's damages are all central issues in the state court litigation, the state court proceeding is a "parallel" proceeding that is "predicated on the same factual transaction or occurrence involved in a matter pending before a federal court." *See Hungerford*, 53 F.3d at 1017; *see also Golden Eagle Ins. Co. v. Travelers Cos.*, 95 F.3d 807, 811 (9th Cir. 1996), *overruled on other grounds by Dizol*, 133 F.3d 1220 (rejecting a plaintiff-insurer's argument that the state court proceedings were not 'parallel' because the state court action involved different parties and different issues and reaffirming the principle that "[i]t is enough that the state proceedings arise from the same factual circumstances").

Take, for example, plaintiffs' claim that there is no duty to indemnify Kerr because the City's alleged property damage was not caused by an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl. (#1) ¶ 30). Plaintiffs assert that this claim bears on the nature of property damage, rather than Kerr's liability for any alleged damage. But in the state court

proceeding, the City alleges that "the Garden home segment has experienced a number of failures for different reasons at different locations, including, but not limited to, failures of air valves, drain valves, a BRICO coupler, . . . [and] improperly fused" pipes." (*See* Van Dyke Decl. (#33) Ex. A at ¶ 6.) Under its second claim for negligence, the City attributes these problems to Kerr's "failure to properly install its pipeline," its recommendations regarding the pipe, and its misrepresentations regarding the suitability of the pipe. (*Id.* at ¶ 16.) In responding to the City's allegations, Kerr has not only denied that it is responsible for property damage, it also disputes the existence of property damage and the manner in which any alleged property damage occurred. Therefore, when deciding plaintiffs' duty to indemnify, the Court would likely determine how the alleged property damage occurred, and that factual determination would likely influence, or conflict with, factual determinations in the state court proceeding. Because the reason for the pipe failure and the consequences of that failure are the central issues in the state court litigation, Kerr's liability in state court seems to be inextricably intertwined with, rather than isolated from, the nature and cause of the City's alleged property damage.

I also disagree that the question of whether Kerr knew about "problems arising with the pipeline before, or shortly after, the Project was completed" is independent of the liability questions at issue in state court. (*See* Compl. (#1) ¶ 32; *see also* Pls.' Opp. to Kerr's Mot. (#24) 2 n.1.) Instead, the insurance implications of Kerr's knowledge will involve evidence that likely bears on the City's breach of contract claim, which alleges, inter alia, that Kerr breached its contract "[b]y failing to correct its deficient work," "[b]y failing to bear all losses and damages that resulted from its performance of work," and "[b]y failing to take responsibility for [the use of HDPE] pipe." (*See* Van Dyke Decl. (#33) Ex. A at ¶ 13.) The City could not prove that Kerr

breached its contract in these respects without also proving that Kerr knew property damage had occurred and knew Kerr's work had caused it. Although Kerr is expected to deny, in both the state and federal proceedings, that it knew of or caused property damage, the potential for factual overlap raises a legitimate concern of either collateral estoppel problems or divergent factual findings in state and federal court.[1]

## IV.  Other Considerations

As *Chamberlain* and *Dizol* make clear, the *Brillhart* factors are not exhaustive. The court should also consider whether the declaratory action "will settle all aspects of the controversy[;] . . . "will serve useful purpose in clarifying the legal relations at issue[;] . . . is being sought for the purposes of procedural fencing or to obtain a 'res judicata' advantage[;] or would result in entanglement between the federal and state court systems." *Dizol*, 133. F.3d at 1225 n.5. Although I agree that resolution of the insurance coverage issues would clarify the relationship between the party, this factor proves too much. Any declaratory judgment action that meets the jurisdictional requirements of Article III will, by definition, clarify some aspect of a relationship between the parties. The real question is the price of that clarification, which is calculated in terms of "judicial administration, comity, and fairness to the litigants." *See Chamberlain*, 931 F.2d at 1367. And in these respects, I am not persuaded that resolution of the insurance coverage

---

[1] Although at least one District of Oregon court applied a "no estoppel rule" to cure the potential for conflicting factual determinations in state and federal court, that decision was driven by a unique set of circumstances and appears to be a rare exception to the general rule against parallel litigation. *See Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1091 (D. Or. 2001) ("When, . . . because of the nature of the underlying third-party litigation, it makes more sense from a case management standpoint to litigate the coverage question first, there are strong policy reasons for applying [a] 'no estoppel' principle to factual determinations made initially in the coverage case.")

issues will come without a substantial cost to the convenience of the state court and the parties, and without creating entanglement between the state and federal court systems. Plaintiffs seek to clarify their coverage obligations to the insured at a late stage of the underlying state litigation, essentially on the eve of trial, even though BCC has defended Kerr in state court for over a year under a reservation of rights. This declaratory judgment action was filed on January 25, 2010, at a time when the state court trial was scheduled for June 7, 2010. The trial has since been rescheduled to September 27, 2010. The timing of this federal lawsuit raises particular concerns with respect to plaintiffs' duty to defend claims, considering there were no amendments to the City's complaint between October 2008 and January 2010. (*See* Second Van Dyke Decl. (#28) ¶ 3 (noting that the City filed its First Amended Complaint in April 2010); Supplemental Van Dyke Decl. (#33) (noting that the City filed its Second Amended Complaint on May 20, 2010).) Defendants argue, and I agree, that discovery and motion practice in this federal lawsuit are likely to disrupt the underlying state litigation as the parties prepare for trial.

## CONCLUSION

Either dismissal or a stay of proceedings is an appropriate remedy to address the concerns described above. *See, e.g., Karussos,* 65 F.3d at 801 (vacating a district court's grant of summary judgment and remanding the case with instructions to dismiss the case for lack of jurisdiction); *Chamberlain,* 931 F.2d at 1367 ("In most cases when a district court refrains from exercising its jurisdiction, the result is that no aspect of the proceeding remains in federal court."); *Century Sur. Co. v. J. Quinn Constr.,* No. CV 09-06085 DDP (JEMX), 2010 WL 330246, at *4-6 (C.D. Cal. Jan. 20, 2010) (dismissing insurance coverage action without prejudice where the underlying state action could create duplicative litigation); *see also Wilton v. Seven Falls Co.,* 515 U.S. 277,

283, 290 (1995) (affirming a district court's decision to stay an "action for declaratory relief where parallel proceedings . . . were underway in state court" and noting that the state court's decision to stay, rather than dismiss, the case was "of little moment"); *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1123 (D. Alaska 1998) (staying a declaratory judgment action involving a coverage dispute "to allow the ongoing fact-finding process to run its full course in state court . . . [and] avoid potential collateral estoppel problems").

Based on the foregoing analysis, which highlight the difficulties in coordinating this case with the pending trial in the state court case, I am persuaded that the state court is the better forum for resolving this coverage dispute. Accordingly, Defendant City of Portland's Motion to Dismiss, Abstain, or in the Alternative, to Stay Proceedings (#16) is GRANTED and this case is DISMISSED without prejudice. Defendant Kerr's Motion to Limit Discovery in Plaintiffs' Claims One and Three (Duty to Defend) and Stay Plaintiffs' Remaining Claims (Duty to Indemnify) (#13) is DENIED AS MOOT.

IT IS SO ORDERED.

DATED this 22 day of June, 2010.

MICHAEL W. MOSMAN
United States District Court